UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MONYA TATE,

        Petitioner,        Case Number: 02-10217-BC
                                            Honorable David M. Lawson

v.

BARBARA BOCK,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Monya Tate, a state inmate presently incarcerated at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of two counts of second-degree murder, Mich. Comp. Laws § 750.317, and one count of possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. He is serving concurrent prison sentences of life and 40 to 80 years for the murders and a consecutive prison term of two years for the felony firearm conviction. The petitioner challenges his convictions on the grounds that the trial court failed to follow proper procedures in replacing a juror after deliberations had begun and improperly instructed the jury. The respondent contends that the petitioner's claims are procedurally defaulted and otherwise without merit. The Court finds that the petitioner's claims lack merit. Therefore, the Court will deny the petition.

I.

The petitioner was tried in 1998 before a jury in the Wayne County, Michigan, circuit court for the shootings of Gregory Mercer and Willie Torrence. The testimony of witnesses at trial established that the petitioner shot Mercer after Mercer was "smart" with him. Torrence was taken

from the scene of the crime and shot near an abandoned building because he witnessed Mercer's killing. The petitioner testified in his own defense, maintaining that his friend Gerald Spears killed the victims.

The trial court empaneled a jury of thirteen citizens. After closing arguments and the final jury instructions, the court drew the name of a juror to be designated as an alternate. The judge cautioned that the alternate juror may be called back if necessary. On the morning of the second full day of deliberations, a juror asked the court to excuse her from service because she had developed an itchy rash for which she was to see a doctor that day; she expressed concern that the rash might be contagious. The court excused the juror, called in the alternate, and instructed the jury that "Obviously you may have to go back, and I'm not going to say go back to square one, but certainly you will have to share with the other juror how you have been deliberating, and that juror will then be part of the 12 who will decide the case." Tr., 9/8/1998, at 6. The alternate was sworn and told the court that no one had spoken about the case with her and she had not received any information about the case since she had been discharged. The jury resumed deliberations with the alternate for approximately two hours and reached a verdict later that same day.

On September 8, 1998, the jury, with the alternate juror substituted in place, found the petitioner guilty of two counts of second-degree murder and one count of felony firearm. The trial court sentenced the petitioner to two years in prison for the felony firearm conviction to be followed by concurrent terms of forty to eighty years and life imprisonment for the two murders.

On direct appeal, the petitioner raised essentially the same claims he raises in his present petition. The Michigan Court of Appeals affirmed the petitioner's convictions in a published opinion. *See People v. Tate*, 244 Mich. App. 553; 624 N.W.2d 524 (2001). On December 4, 2001,

the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed by that court; one justice would have reversed and remanded for a new trial based on the petitioner's first issue, while another justice would have granted leave to appeal. *See People v. Tate*, 465 Mich. 920; 638 N.W.2d 749 (2001).

The petitioner's habeas petition was filed August 7, 2002. The grounds for relief allege that:

I.  The state trial judge deprived petitioner Tate of his Sixth Amendment right to a trial by jury and of his Fourteenth Amendment right to due process of law and a fair trial when the state trial judge: (A) excused the itching juror from service after deliberations had begun; (B) recalled an alternate juror who had been discharged; (C) did not make an inquiry of the alternate juror whether she had discussed the case with anyone; (D) failed to instruct the jury to begin its deliberations 'anew' after the alternate was seated. U.S. Const., Amends. VI & XIV.

II. Petitioner Tate was deprived of his Fourteenth Amendment rights to a fair trial and of his right to present a 'complete defense,' when the state trial judge gave misleading instructions to the jury on petitioner's theory of the case. U.S. Const., Amend. XIV.

The respondent argues that the petitioner failed to object to the claimed errors at trial and that there is no basis on which to grant habeas relief.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner's first habeas claim alleges that he was deprived of his constitutional rights to a jury trial and due process of law when the trial court: (A) excused a juror from service after deliberations had begun; (B) recalled an alternate juror who had been discharged; (C) did not ask the alternate juror whether she had discussed the case with anyone; and (D) failed to instruct the jury to begin its deliberations 'anew' after the alternate was seated.

The state court of appeals held that the petitioner waived parts A, B, and C of his argument by his counsel's assent to the court's procedures regarding this event. The court explained:

-5-

> In this case, the trial court clearly instructed the jury that one of the thirteen jurors, a name to be drawn, would be an alternate who would be called in to continue deliberations in the event that one of the seated jurors was unable to continue, and defense counsel expressly approved the instructions as given. Then, when the court questioned and excused the juror, there was no objection, and counsel again, when queried by the court whether there was anything for the record, responded "No." Pursuant to [*People v.*] *Carter*, [462 Mich. 206, 612 N.W.2d 144 (2000)] *supra*, we conclude that any error in either the instruction regarding the procedure in the event a juror had to be excused or the actual removal of the juror was extinguished by counsel's repeated waiver, either in the form of express approval or (which amounts to the same thing) by responding "No" when specifically queried by the court whether there was anything further for the record.

*People v. Tate*, 244 Mich. App. 553, 559, 624 N.W.2d 524, 528 (2001). The court also held that the petitioner forfeited part D of his argument by failing to object to the trial court's failure to instruct the jury to begin deliberations anew. Moreover, the court observed that the petitioner would not be entitled to relief on the merits of these claims. The respondent argues that the claims are procedurally defaulted. However, the Court believes the petitioner's claims are without merit, and therefore it need not consider the procedural default question. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

1.

The petitioner first argues that the trial court improperly excused a juror from service after deliberations had already begun; he says this practice violated his right to have the originally selected jury decide his case. He cites *United States v. Jorn*, 400 U.S. 470, 479, 484 (1971) (plurality opinion), and *People v. Gardner*, 37 Mich. App. 520, 195 N.W.2d 62 (1972), in support. The state court of appeals found that the petitioner had waived this argument because his trial counsel had consented to the removal of the juror. The state court also reviewed the trial judge's action for an abuse of discretion and found no abuse. The court explained:

> In any event, a trial court's decision to remove a juror will be reversed only when there has been a clear abuse of discretion. *People v. Dry Land Marina*, 175 Mich. App. 322, 325; 437 N.W.2d 391 (1989); cert den. 495 U.S. 931; 110 S. Ct. 2170; 109 L. Ed. 2d 499 (1990). An abuse of discretion will be found only when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification or excuse for the ruling made. *People v. Ullah*, 216 Mich. App. 669, 673; 550 N.W.2d 568 (1996). In *Dry Land Marina, supra*, there was a jury of twelve and two alternates. Over defense objection the trial court excused a deliberating juror who had broken her arm the preceding weekend, was having circulatory problems with her hand, was taking pain medication which made her groggy and was possibly slated for surgery. This Court found that the trial court did not abuse its discretion. *Id.*, at 324.
>
> In this case, the court was concerned for the juror's discomfort, was concerned that the rash might be contagious and was advised that the juror's pharmacist told her to see her doctor that very day. We similarly conclude, especially due to the potential that the rash might be contagious to the other jurors, that the trial court did not abuse its discretion in dismissing the juror.

*People v. Tate*, 244 Mich. App. 553, 559-60, 624 N.W.2d 524, 528 (2001). The Michigan Court of Appeals noted that *Jorn* and *Gardner* were not applicable to the case because both involved violations of the Double Jeopardy Clause where a mistrial was declared without the defendant's consent. The court further stated:

> In any event, this Court has determined that, while a defendant has a fundamental interest in retaining the composition of the jury as originally chosen, he has an equally fundamental right to have a fair and impartial jury made up of persons able and willing to cooperate, a right which is protected by removing a juror unable or unwilling to cooperate. *Id*. [*Dry Land Marina*], at 326. Removal of a juror under Michigan law is therefore at the discretion of the trial court, weighing a defendant's fundamental rights to a fair and impartial jury with his right to retain the jury originally chosen to decide his fate.
>
> Here, defendant argues that the rash appeared not to be life-threatening or mind-incapacitating, and that the trial court should have sent the juror to medical facilities in the building. We are unpersuaded. In this case, as in *Dry Land Marina*, "the decision to excuse the ailing juror constituted a proper exercise of judicial discretion supported by fact and logic."

*People v. Tate*, 244 Mich. App. 553, 562, 624 N.W.2d 524, 528 (2001).

The petitioner's arguments that the trial court was too quick to replace the juror merely amount to attacks on the court's exercise of its discretion. The Court finds that the petitioner has not shown that the trial court violated his constitutional rights by excusing the juror. The petitioner's only support for this assertion is his citation of *Jorn* and its language that a defendant has a "valued right to have his trial completed by a particular tribunal." *Jorn*, 400 U.S. at 484 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). The plurality opinion in *Jorn* must be read in its proper context. The trial judge in that case aborted the trial without the defendant's consent when government witnesses were called upon to give testimony that might have been self-incriminatory. *Id*. at 473. The trial judge believed that the witnesses had a right to consult with counsel and discharged the entire sworn jury as a matter of convenience, and the Supreme Court found that retrial violated the Double Jeopardy Clause. *Id*. at 487.

The Supreme Court subsequently has made clear that the right to "a particular tribunal" is not absolute:

> This description of the right, which was quoted by Mr. Justice Harlan in his plurality opinion in *United States v. Jorn*, 400 U.S. 470, 484, and by the Court in *Illinois v. Somerville*, 410 U.S. 458, 466, was formulated by Mr. Justice Black in his opinion for the Court in *Wade v. Hunter*, 336 U.S. 684, 689. His complete sentence identifies that right as sometimes subordinate to a larger interest in having the trial end in a just judgment: "What has been said is enough to show that a defendant's valued right to have a trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Ibid*.

*Arizona v. Washington*, 434 U.S. 497, 504 n.11 (1978).

The *Jorn* opinion invoked the right to the original jury because "the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of a mistrial." *Jorn*, 400 U.S. at 485. In the

present case, the case was not taken from the jury and the trial court did not declare a mistrial. Since the *Jorn* opinion involves the rights of a defendant in the context of a mistrial that implicates the Double Jeopardy Clause and does not address the question of the substitution of jurors or the discharge of a single juror, it provides little guidance here. What can be said, however, is that the discretionary decision by a state trial judge to excuse an ailing juror transgresses no "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Therefore, the petitioner is not entitled to habeas relief on this issue.

2.

The petitioner next argues that the trial court violated state law and deprived him of due process when it recalled an alternate juror who had been discharged just prior to deliberations. The Michigan Court of appeals found that the petitioner had waived this issue when he failed to object to the appointment of the alternate juror. That court further explained:

> We agree that the recall of a juror, once discharged, is in violation of the language in both the then-existing FR Crim P 24(c) and MCR 6.411, and is therefore error by the trial court. See *Dry Land Marina, supra*, 328. However, noting that the language of both the Michigan rule and its federal counterpart is not constitutionally mandated and that the most substantial danger of a violation of either rule is possible coercion of the alternate by the existing panel members, *id.*, at 328-329, this Court has agreed with "the prevailing holding among the circuits," and held that "absent consent of the defendant, [recalling a juror] requires reversal of a conviction only when the defendant has been prejudiced by the procedure." *Id.*, 329. See also, *People v. Bettistea*, 173 Mich. App. 106; 434 N.W.2d 138 (1988).
>
> Defendant argues that, because the jury deliberated approximately seven hours before substitution and only two hours after, the difference in time is evidence of jury coercion, and further argues that, because the jurors requested a rereading of the instructions distinguishing first[-] and second[-]degree murder right before delivering the verdict, they had already decided defendant was guilty. Even if defendant had not waived this error, *Carter, supra*, we find these claims to be speculative. Moreover, we are not persuaded that defendant has shown prejudice, and the evidence of guilt in this case was overwhelming.

*People v. Tate*, 244 Mich. App. 553, 564; 624 N.W.2d 524 (2001).

To the extent that the trial court violated state law, the petitioner does not state a cognizable ground for habeas corpus relief. It is well-established that "federal habeas corpus relief does not lie for errors of state law," unless the petitioner was deprived of the fundamental elements of fairness. *Estelle v. McGuire*, 502 U.S. 62, 67, 70 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The petitioner has not shown that the recall of the alternate was fundamentally unfair. As the state court noted, it is unlikely that the juror was unduly pressured by the other jurors because the jury deliberated for approximately two hours after the juror joined deliberations. Before the alternate was seated, the jury had requested the court to reread some of the instructions and asked the court for statements of some of the witnesses. The alternate was not at a disadvantage when she joined deliberations because she was provided with a photocopy of the requested instructions and the trial court had denied the jury's request for copies of some of the witness statements.

3.

The petitioner also argues that the trial court erred in failing to ask the alternate whether she "discussed the case with anyone" or formed an opinion of guilt before she rejoined the jury. As the state court noted, this contention is contradicted by the record. After calling the alternate back to court, the trial court made the following inquiry on the record:

> THE COURT: Ma'am, the jurors went out to deliberate initially on Thursday afternoon, and my concern is whether or not since the time you were excused, has either any juror or anyone spoken with you or attempted to speak to you about this particular case?
>
> JUROR NO. 10: Not since I have been dismissed.
>
> THE COURT: Okay.

> And so that there is no information or nothing that has been provided to you about this case since you left here when your name was drawn as an alternate; is that right?
>
> JUROR NO. 10: That's correct.
>
> THE COURT: And can you think of any reason why you couldn't fairly and reasonably deliberate on this case and be fair to both sides?
>
> JUROR NO. 10: No, I cannot, your Honor.

Tr., 9/8/1998, at 8-9. The court's inquiry and the juror's responses indicate that she did not discuss the matter with anyone and held no bias for or against either side. The trial court's inquiries were adequate and did not deprive the petitioner of the fundamental elements of fairness guaranteed by the Due Process Clause.

4.

Finally, the petitioner argues that the trial court deprived him of due process when it instructed the jury to resume deliberations when the alternate joined them, but did not instruct them to begin deliberations anew. The Michigan Court of Appeals found that this was error, but noted that the petitioner failed to object to this instruction and concluded that the error was harmless because the juror sat through the entire trial and there was nothing to prevent the jurors from beginning deliberations anew. The state court distinguished the case from *United States v. Lamb*, 529 F.2d 1153 (9th Cir. 1975), where an alternate replaced a juror after the jury returned a verdict that was rejected by the trial court.

The petitioner argues that the trial court affirmatively told the jury not to "go back to square one." On the contrary, the trial court specifically told the jury to "go back," and although it was "not going to say go back to square one," left open the possibility that the jurors could begin deliberations anew. The judge instructed the jurors to "share with the other juror how you have been

-11-

deliberating." In *Claudio v. Snyder*, 68 F.3d 1573, 1574 (3d Cir. 1995), the Third Circuit Court of Appeals found no constitutional violation where a trial court carefully instructed the jury to "completely update" the alternate "as to the stage of deliberations you as a group have reached." Observing that the jury deliberated for a significant amount of time after the substitution of the juror and the trial court's instructions on updating the alternate were very detailed, the court held that the trial court's instructions were the "functional equivalent" of an instruction to "begin anew." *Id*. at 1577. In *Peek v. Kemp*, 784 F.2d 1479, 1485 (11th Cir. 1986), the Eleventh Circuit Court of Appeals found no deprivation of constitutional rights where a juror was substituted with an alternate juror after deliberations commenced, but the jury was not instructed to begin deliberations anew. That court noted that because the alternate sat through the entire case, heard the instructions, and reviewed the case with the jury after joining the jury, any prejudice was speculative. *Id*. The facts of the instant case are quite similar. The Court agrees with the conclusions of the Third and Eleventh Circuits that the process utilized in those cases, although not ideal, was consistent with the fundamental fairness required by the Due Process Clause. The process in this case likewise comports with due process. The procedure utilized by the Michigan trial judge does not undermine confidence in the outcome of the trial.

Moreover, even if failing to instruct the jurors to begin anew amounted to constitutional error, the error was harmless because the evidence against the petitioner was overwhelming. The petitioner argues that any of the witnesses against him could have been the killer, and he himself testified at trial that Gerald Spears, who did not testify, killed the victims. However, two eyewitnesses testified that the petitioner killed the victims. The jury's acceptance of that testimony could not have been influenced by the substitution of the alternate juror.

B.

The petitioner's only other claim is that the trial court gave a misleading and inadequate jury instruction on the petitioner's theory of the case. The petitioner asserts that the trial court's jury instruction was inadequate and deprived him of a fair trial and his right to present a complete defense because the trial court did not incorporate the petitioner's version of events into the instructions.

A criminal defendant has a constitutional right to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). "A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002). However, the question on habeas review of jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The disputed jury instruction in this case reads as follows:

> In this case, ladies and gentlemen, it is the defendant's contention that he was merely present at the time of these shootings. Even if the defendant knew that the alleged crime was planned or being committed, the mere fact that he was present when it was committed is not enough to prove that he participated or committed the offense.

(Tr. Sept. 3, 1998, at 141). According to the petitioner, this instruction does not describe adequately his defense theory. The petitioner argues that his assertion that Gerald Spears shot the two victims

-13-

was central to his defense and should have been included with the statement that he was merely present and took no part in the shooting.

The petitioner's requested instruction amounted to argument on his theory of the case. That information was explained adequately by defense counsel, whose job it was to summarize the testimony, explain the defense theory, and attempt to persuade the jury that it should accept the defendant's version over that of the prosecution. The trial court was not an advocate for the defendant.

The Court concludes, therefore, that the trial court's instruction was not inadequate. The question before the jury focused on the petitioner's culpability, and the instruction properly explained that the petitioner claimed that he was present, but took no part in the killings. As the state court of appeals noted, it "was not material whether the jury believed that Spears was the shooter, only that [the petitioner] was not." *People v. Tate*, 244 Mich. App. at 568. The petitioner's argument implies that the trial court has a duty to argue the petitioner's case in the instruction; that most certainly is not the office of the trial judge. Therefore, the disputed jury instruction did not deprive the petitioner of due process, and the state court's denial of relief did not result in a decision that contrary to, or an unreasonable application of, Supreme Court decisions on jury instructions and the right to present a defense.

### III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States. The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.

-14-

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 12, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS